IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAMERON NICOLE PARKER     *
    *
      v.     *     Civil Case No. ELH-16-2607
    *
COMMISSIONER, SOCIAL SECURITY     *
    *

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the Commissioner's motion for summary judgment. [ECF No. 18]. Plaintiff, Cameron Nicole Parker, who appears *pro se*, did not file a motion for summary judgment and did not file an opposition to the Commissioner's motion.[1] This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons set forth below, I recommend that the Commissioner's motion be denied, and the case be remanded to the Commissioner for further explanation of the evaluation of the medical evidence.

Ms. Parker filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on June 20, 2012, alleging a disability onset date of November 5, 2011. (Tr. 215-27). Her applications were denied initially and on reconsideration. (Tr. 129-33,

[1] On January 20, 2017, the Clerk of Court mailed a Rule 12/56 letter to Ms. Parker, advising her that the Commissioner had filed a motion for summary judgment and describing the potential consequences of a failure to respond to that motion. [ECF No. 19]. Ms. Parker did not file any response.

138-41). After a hearing on January 27, 2015, an Administrative Law Judge ("ALJ") issued an opinion denying benefits. (Tr. 54-69). Ms. Parker, who was represented by counsel throughout the administrative proceedings, appealed the decision. (Tr. 52-53). However, the Appeals Council ("AC") denied review, making the ALJ's decision the final, reviewable decision of the Agency. (Tr. 1-6).[2]

In relevant part, the ALJ found that Ms. Parker suffered from the severe impairments of "congenital heart defect (status post multiple surgeries);" pulmonary hypertension, and asthma. (Tr. 59). Despite those impairments, the ALJ determined that Ms. Parker retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that the claimant requires a sit/stand option on an occasional basis and can perform work involving only occasional postural activity; no excessive environmental conditions; and no climbing, or exposure to heights or hazards.

(Tr. 60). The ALJ further determined that Ms. Parker was unable to perform her past relevant work, but could perform other jobs existing in significant numbers in the national economy. (Tr. 64-65). Accordingly, the ALJ concluded that Ms. Parker was not disabled. (Tr. 65).

Because Ms. Parker appears *pro se,* I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's

---

[2] Although the ALJ's decision represents the final, reviewable decision of the Agency, the Court, on appeal, must review an ALJ's opinion in addition to the AC's failure to consider new and material evidence. *See Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) (remanding due to AC's failure to consider new and material evidence); *see Barton v. Astrue*, 495 F. Supp. 2d 504 (D. Md. 2007) ("When the Appeals Council incorporates new evidence into the record on claim for disability insurance benefits, the court reviewing the Appeals Council's determination must review the record as a whole, including the new evidence.").

findings). I have particularly considered the arguments Ms. Parker's prior counsel raised during the administrative proceedings. (Tr. 305-06). In reviewing those arguments, it became clear that prior counsel submitted a set of medical records, entered into the record as Exhibits 9F-11F, that were not considered by either the ALJ or the AC. *See* (Tr. 387-94). Accordingly, remand is appropriate to allow for a full evaluation of those records.

Otherwise, the ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. The ALJ ruled in Ms. Parker's favor at step one, and determined that she did not engage in substantial gainful activity after her alleged onset date of November 5, 2011. (Tr. 59); *see* 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considered the severity of each of the impairments that Ms. Parker claimed prevented her from working. *See* 20 C.F.R. § 404.1520(a)(4)(ii). As noted above, the ALJ concluded that several of Ms. Parker's alleged impairments were severe. (Tr. 59). The ALJ further determined that Ms. Parker's depression, bone aches, and mild obesity were non-severe, providing citations to the medical evidence of record to support those conclusions. (Tr. 59-60).

At step three, the ALJ determined that Ms. Parker's impairments did not meet the specific requirements of, or medically equal the criteria of, any listings. (Tr. 60). The ALJ specifically identified Listings 4.02 (chronic heart failure), 4.05 (arrhythmias), and 4.06 (symptomatic congenital heart disease), and cited to the specific criteria for each listing that had not been met. *Id.*

In considering Ms. Parker's RFC assessment, the ALJ summarized her subjective complaints of disabling breathing problems, heart problems, and bone aches, and her reported limited activities of daily living. (Tr. 61). The ALJ determined that Ms. Parker's subjective complaints were not entirely credible, because her "course of treatment, medications, and

progress notes do not fully support her allegations." *Id.* The ALJ summarized the evidence showing that Ms. Parker's congenital heart disease causes chest pain, shortness of breath, and fatigue. (Tr. 61-62). However, the ALJ concluded that she remained capable of a restricted range of sedentary work to account for her "significant, credible exercise intolerance." (Tr. 62). In support of that conclusion, the ALJ relied on the fact that her last surgery was in 2013 and she has not required hospitalization or significant emergency room treatment since that date. *Id.* The ALJ noted that, at her most frequent appointments, there had been no evidence of "cyanosis, heart failure, ischemia, or similar problems." *Id.* The ALJ noted that the State agency consultants had believed Ms. Parker to be capable of greater exertion, but that her treating physicians had provided statements indicating that she would be more limited. (Tr. 63). The ALJ assigned "little weight" to the treating physicians' opinions, citing medical evidence showing no peripheral edema or heart failure, an ability to sit without physical activity, the relatively new treatment relationship at the time one physician issued his opinion, and the fact that one other physician found no physical explanation for Ms. Parker's shortness of breath. *Id.* Accordingly, the ALJ's RFC assessment of Ms. Parker's exertional capacity fell between the recommendations of the non-examining physicians and the treating physicians.

At step four, the ALJ found that Ms. Parker was unable to perform her past relevant work because those jobs were "either light or medium in exertion." (Tr. 63). However, after considering the testimony of the VE, the ALJ found that Ms. Parker was capable of a restricted range of sedentary jobs existing in significant numbers in the national economy, such as food and beverage worker, surveillance system monitor, and telephone information clerk. (Tr. 64).

Regardless, the issue with this case lies not in the analysis contained within the ALJ opinion, but in the Commissioner's apparent failure to consider medical records later submitted

by Ms. Parker's attorney to the Appeals Council.  In his letter of March 26, 2015, Ms. Parker's

then-counsel wrote:

> Attached please find progress notes from Dr. Thomas Traill, the Claimant's new
> cardiologist at Johns Hopkins Hospital, and Dr. Traill's Certified Registered
> Nurse Practitioner, Gail Beth Hefner.  The Claimant is treating with this new
> provider due to insurance issues.  Dr. Traill writes that the Claimant "is clearly
> disabled and should not be working."  He notes that the Claimant's conduit has "a
> very loud murmur and evidence of more than moderate right ventricular
> hypertension," and will most likely need to be replaced.  Please note that Dr.
> Traill is the third board certified cardiologist who has considered cardiac surgery
> for the Claimant within the past two years.  Dr. Traill's treatment notes
> corroborate Exhibit 4F, in which Dr. Haque opines that the Claimant will need
> cardiac surgery, and Exhibit 5F, in which Dr. Fisher writes that the Claimant may
> need revision surgery or a defibrillator implant.

(Tr. 306).  Oddly, however, rather than becoming part of the record as attachments to counsel's

March 25, 2016 letter, Dr. Traill's treatment notes and the related records from Johns Hopkins

Hospital were docketed as medical exhibits 9F, 10F, and 11F.

The regulatory scheme requires the AC to "consider new and material evidence…in

deciding whether to grant review."  *Meyer v. Astrue,* 662 F.3d 700, 706 (quoting *Wilkins v.*

*Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991)).  When the AC denies

review, it is not required to take any specific action in response to new and material evidence,

and is not required to provide a detailed explanation of its evaluation.  *Id.*  Here, however, the

AC wrote:

> In looking at your case, we considered the reasons you disagree with the decision
> in the material listed on the enclosed order of Appeals Council.  We found that
> this information does not provide a basis for changing the Administrative Law
> Judge's decision.  We also looked at medical records from Johns Hopkins
> Hospital covering the periods October 2, 2015 (3 pages), November 13, 2015
> through November 27, 2015 (29 pages), May 8, 2016 (11 pages) and May 11,
> 2016 (2 pages).  The Administrative Law Judge decided your case through
> February 18, 2015.  This new information is about a later time.  Therefore, it does
> not affect the decision about whether you were disabled beginning on or before
> February 18, 2015.

(Tr. 2).   The "material listed on the enclosed order of Appeals Council" is "Exhibit 10E/Representative's brief dated March 26, 2015 (2 pages)."  (Tr. 5).  Although that letter from Ms. Parker's then-Counsel makes reference to Dr. Traill's opinion, nothing suggests that the AC actually received or reviewed Exhibits 9F, 10F, and 11F, which include seven pages of treatment records from October, 2014 and December, 2014.  (Tr. 387-93).

The materials contained in Exhibits 9F, 10F, and 11F are both new and material.  They are new because they were not considered by the ALJ.  *See* (Tr. 57) ("Exhibits 1A-8F were received into evidence.").   They are material because the treatment notes, taken during the relevant period predating the ALJ's opinion by a cardiologist at Johns Hopkins Hospital, could possibly have impacted the ALJ's determination.   *Wilkins*, 953 F.2d at 96 (holding that "evidence is material if there is a reasonable possibility that it would have changed the outcome.").   In particular, Dr. Traill opined that Ms. Parker suffered from a disabling heart condition, which may also have affected the ALJ's evaluation of the prior like opinions from Ms. Parker's other treating cardiologists. (Tr. 393).  Accordingly, I cannot conclude that the AC fulfilled its duty to consider all of the new and material evidence in deciding to decline review.  *See* 20 C.F.R.   Sec. 404.970(b);   *See Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) (remanding because "[t]he Appeals Council made the new evidence part of the record but summarily denied review of the ALJ decision. Thus, no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record.").   Remand is therefore appropriate for full consideration of the evidence by the Commissioner.   In recommending remand, I express no opinion as to whether the ALJ's ultimate decision that Ms. Parker was not disabled is correct or incorrect.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Defendant's Motion for Summary Judgment, [ECF No. 18]; VACATE the decision of the Commissioner pursuant to 42 U.S.C. § 405(g); REMAND the case to the Commissioner for further proceedings; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  February 21, 2017                              _____/s/_____

                                                      Stephanie A. Gallagher
                                                      United States Magistrate Judge